IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**JOHN TAYLOR,**
*on behalf of himself and*
*others similarly situated,*

      **Plaintiff,**

v.                                                                **Civil Action No. 3:18cv378**

**TIMEPAYMENT CORPORATION,**

      **Defendant.**

## MEMORANDUM OPINION

Plaintiff John Taylor brings this five-count Complaint[1] against Defendant Timepayment Corporation ("Timepayment"), alleging various violations under the Consumer Leasing Act ("CLA"), 15 U.S.C. § 1667 *et seq.*; the Truth in Lending Act ("TILA"), 15 U.S.C. § 160 *et seq.*; and Virginia state law. (*See* Compl., ECF No. 1.) Timepayment moved to dismiss Taylor's Complaint, arguing that Taylor lacked Article III standing[2] under Federal Rule of Civil

---

[1] Taylor's claims arise out of a contractual agreement (the "Agreement") between Taylor and Timepayment related to Taylor's acquisition of a heat pump for his home. (*See* Compl., ECF No. 1; Agr., ECF No. 1-1.) The Agreement pertained to Taylor's payment for a heat pump to Timepayment. Timepayment specializes in financing for equipment such as computers, powersports vehicles, home alarm monitoring equipment, and, HVAC and heating and cooling equipment.
    The first page of the Agreement contains a heading that reads, "Consumer Equipment Lease," (Agr. 1 (capitalization altered and bolding removed)), although subsequent pages refer to the parties as "buyer" and "seller," (*id.* 5, 6, 7). Taylor characterizes the Agreement as a "consumer credit sale[] disguised as [a] lease[] for personal property." (Compl. ¶ 5, ECF No. 1.) The nature of the Agreement shapes the dispute in this case.

[2] To establish standing pursuant to Article III of the United States Constitution, a plaintiff must show that she or he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial outcome." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (citing *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–61 (1992)).

1

Procedure 12(b)(1)[3] and failed to state a claim under Rule 12(b)(6)[4] (the "Motion to Dismiss"). (ECF No. 16.)

The Court referred the Motion to Dismiss to the Honorable David J. Novak, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B).[5] (ECF No. 25.) On February 5, 2019, the Magistrate Judge filed a Report and Recommendation ("R&R"). (ECF No. 30.) After conducting a thorough analysis, the Magistrate Judge recommended that the Court grant the

---

[3] "[A] party may assert the following defense[ ] by motion: (1) lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenging the Court's subject-matter jurisdiction, the burden rests with the plaintiff, as the party asserting jurisdiction, to prove that federal jurisdiction is proper. *See Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Here, the Rule 12(b)(1) motion attacks the complaint on its face, asserting that the complaint fails to state a claim upon which subject-matter jurisdiction can lie. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see Adams*, 697 F.2d at 1219. In such a challenge, a court assumes the truth of the facts alleged by plaintiff, thereby functionally affording the plaintiff the same procedural protection she or he would receive under Rule 12(b)(6) consideration. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (noting, under an analysis of standing guided by *Spokeo*, that general factual allegations of injury may suffice at the pleading stage because the court may accept plausible facts as true).

[4] Federal Rule of Civil Procedure 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

[5] Section 636(b)(1)(B) provides, in relevant part:

**(b)(1)** Notwithstanding any provision of law to the contrary—

> (B) a judge may also designate a magistrate judge . . . to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of [pretrial motions such as motions to dismiss for failure to state a claim upon which relief can be granted or motions for summary judgment.]

28 U.S.C. § 636(b)(1)(B).

Motion to Dismiss as to Counts I, II, and IV (the "Standing Counts")[6] and deny the Motion to Dismiss as to Counts III and V (the "Rule 12(b)(6) Counts").[7]

By copy of the R&R, the Magistrate Judge advised each party of the right to file written objections to the findings and recommendations made in the R&R. 28 U.S.C. § 636(b)(1). On February 19, 2019, Timepayment and Taylor each filed timely objections to the R&R. (ECF Nos. 31, 31.) Taylor filed a brief opposing Timepayment's Objection to the R&R. (ECF No. 33.) Timepayment responded, and Taylor replied. (ECF Nos. 34, 35.) The Court has conducted a *de novo* review of the R&R and each party's objections.

## I. The Court Will Overrule Timepayment's Objections

Timepayment lodges two objections, both of which the Court overrules. Timepayment raises the following arguments: (1) the Agreement does not constitute a credit sale subject to

---

[6] Timepayment challenged these counts under Rule 12(b)(1), arguing that Taylor lacked standing under Article III of the United States Constitution. U.S. Const. Art. III, § 2.
As to Count I (the CLA disclosure count), the R&R concluded that Taylor failed to show an injury in fact, a necessary element to satisfy Article III's standing test, because the alleged disclosure violations were materially divorced from any alleged harm. *Spokeo*, 136 S. Ct. at 1549.
As to Count II (the CLA early termination count), the R&R recommended dismissal because Taylor "alleged a 'speculative, hypothetical injury' that falls short of Article III's case-or-controversy requirement" that does not suffice to meet Article III's requirement that an injury exist or be imminent to confer standing. (R&R 19, ECF No. 30); *Spokeo*, 136 S. Ct. at 1548.
Finally, the R&R stated that Count IV (the Virginia UCC Count) must fail because the Virginia UCC provisions that Taylor relied on in his Complaint "only accrue upon default," meaning the "allegations in Count IV [constitute] another purely speculative, hypothetical injury insufficient to confer standing." (R&R 22); *Spokeo*, 136 S. Ct. at 1548.

[7] Timepayment challenged these counts under Rule 12(b)(6), arguing that Taylor failed to state a plausible claim for relief.
As to Count III (the TILA disclosures count), the R&R concluded that Taylor plausibly pled facts in support of his contention that the Agreement constitutes a credit sale subject to TILA provisions, meaning that Taylor can pursue his TILA disclosures claim.
Finally, the R&R recommended that Count V (the Virginia usury count) proceed because Virginia's usury law applies to credit sales under TILA, and Taylor plausibly pled that the Agreement constitutes a credit sale subject to TILA.

3

TILA because the value of the purchase option may equal fair market value of the heat pump at the end of the contractual term; and, (2) Virginia usury law does not apply to the Agreement because Virginia's usury law does not apply to lease agreements. Timepayment asks the Court to overrule the R&R as to these recommended findings, and instead deny the Motion to Dismiss as to the TILA disclosures count (Count III) and the Virginia usury count (Count V).

In Count III, Taylor claims that Timepayment did not comply with the disclosure requirements contained in TILA § 1638(a) because Timepayment failed to disclose the true financing cost of the heat pump. Taylor contends that Timepayment failed to disclose the interest rate in the Agreement, leaving him "unaware of the true financing cost associated with his purchase of the heat pump." (Compl. ¶ 66.)

In its Motion to Dismiss, Timepayment challenged Count III under Federal Rule of Civil Procedure 12(b)(6),[8] arguing that Taylor cannot bring any TILA claims because the Agreement does not constitute a credit sale as defined within TILA or its implementing regulation. (Mem. Supp. Mot. Dismiss 18–19, ECF No. 17.) TILA and its implementing regulation, 12 C.F.R. § 1026.2(a) ("Regulation Z"), define the term "credit sale" to include:

> any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the property upon full compliance with his obligations under the contract.

15 U.S.C. § 1602; *see also* 12 C.F.R. § 1026.2(a)(16). Specifically, Timepayment highlighted

---

[8] For the purpose of the Rule 12(b)(6) Motion to Dismiss, the Court will accept the well-pleaded factual allegations in the Complaint as true, and draw all reasonable inferences in favor of Plaintiffs. *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) ("[A] court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011))).

4

the Agreement's purchase option provision, which allows Taylor to purchase the heat pump "for its fair market value, not to exceed 3 regular monthly lease payments"[9] at the end of the monthly payment schedule. (Agr. 1, ECF No. 1-1.) According to Timepayment, a purchase option valued at fair market value cannot constitute "nominal consideration" as a matter of law, meaning that the Agreement would fall outside TILA's scope. (Mem. Supp. Mot. Dismiss 19 (citing VA. CODE ANN. § 8.1A-203).)

In considering Timepayment's arguments, the Magistrate Judge evaluated the purchase option provision, correctly concluding that, although the value of the purchase option was uncertain, it would equal either the lower of the fair market value of the heat pump at the end of the payment schedule under the Agreement or $1,231.32. The R&R concluded: "Viewing the facts in the light most favorable to Plaintiff, as the Court must do at this stage of the litigation, $1,231.32 *may* represent an amount substantially less than the fair market value of the heat pump at the end of the lease term, thereby constituting nominal consideration." (R&R 28.) Because Taylor may become the owner of the heat pump at the end of the Agreement schedule by paying only nominal consideration, the Agreement may constitute a credit sale agreement subject to TILA.

In its Objection to the R&R, Timepayment argues that because the purchase option "is tied to the fair market value of the heat pump at lease-end, the consideration required for Plaintiff to exercise the purchase option is not nominal consideration as a matter of law." (Timepayment

---

[9] Three monthly payments equals $1,231.32. The Agreement does not provide this figure, either in the purchase option provision, or elsewhere, meaning the borrower must cross-reference other provisions of the Agreement to calculate this maximum total amount.

Obj. 3, ECF No. 31.) This argument simply reiterates Timepayment's prior positions,[10] and more importantly, misses the mark. The R&R did not determine whether fair market value necessarily constitutes nominal consideration, and the Court need not resolve that question here. Instead, the R&R states that, at this procedural stage, and without knowing the future fair market value of the heat pump, the maximum amount that Taylor would have to pay to own the heat pump ($1,231.32) *may* be significantly lower than fair market value, and, as a result, *may* constitute only nominal consideration. The R&R reached this conclusion by carefully evaluating the sparse caselaw on point, and thoughtfully weighing analogous transactional law. Because a possibility exists that Taylor's purchase option will require only nominal consideration, the R&R correctly recommended a finding that Taylor plausibly pled facts in support of construing the Agreement as a credit sale under TILA.

Next, Timepayment argues that the R&R erred in concluding that the Virginia usury claim (Count V) survives the Rule 12(b)(6) challenge. In support, Timepayment renews its contention that the Agreement constitutes a lease, not a credit sale, and claims that Virginia usury law does not apply to leases.[11] Additionally, even assuming the Agreement constitutes a credit sale, Timepayment argues, "Virginia usury law does not apply to credit sales." (Timepayment Obj. 7 (citing *Galloway v. Bluegreen Vacation Club*, No. 3:11cv481, 2012 WL 113862, at *1 (E.D. Va. Jan. 13, 2012).) But Timepayment, again, merely restates the positions

---

[10] Specifically, the Motion to Dismiss posited that, under Virginia law, "[a]dditional consideration is not nominal if... the price is stated to be the fair market value of the goods determined at the time the option is to be performed." (Mem. Supp. Mot. Dismiss 19 (alterations in original) (quoting VA. CODE ANN. § 8.1A-203(d)(2)).) In its Objection to the R&R, Timepayment again relies on this Virginia statute to argue that a purchase option valued at fair market value cannot constitute "nominal consideration as a matter of law." (Timepayment Obj. 3 (citing VA. CODE ANN. § 8.1A-203(d)(2)).)

[11] As discussed above, this argument cannot prevail at this procedural juncture.

it took in its Motion to Dismiss, all of which the Magistrate Judge thoroughly considered and rejected in the R&R.[12] Taylor plausibly pleads facts to support a claim that the Agreement constitutes a credit sale subject to Virginia usury law.

## II. The Court Will Sustain One of Taylor's Objections

In light of recent guidance from the United States Court of Appeals for the Fourth Circuit published after the Magistrate Judge issued the R&R, Taylor raises several objections. Considering the Fourth Circuit's most recent articulation of the law governing standing, the Court will allow the CLA disclosures count (Count I) to proceed. *See Curtis v. Propel Property Tax Funding, LLC, et al.*, 915 F.3d 234 (4th Cir. 2019).[13]

### A. Relevant Factual and Procedural Background

The Consumer Lease Act ("CLA") requires lenders to make certain disclosures to borrowers.[14] 15 U.S.C. § 1667 *et seq.* Plaintiffs assert that the Agreement violates the CLA and its implementing regulation because it fails to segregate at least four of the required disclosures. They also suggest that many of the disclosures themselves are violative. For instance, in Count I, Taylor alleges that the disclosures Timepayment provided did not comply with CLA

---

[12] For example, the Magistrate Judge considered Timepayment's argument that *Galloway*, 2012 WL 113862, supports its position that Virginia usury law does not apply to credit sales. After thoroughly analyzing the possible application of the time price differential theory, the R&R ultimately rejected its application here because the parties did not "fairly agree[] on" the financing terms of the Agreement. (R&R 34 (quoting *Graeme v. Adams*, 64 Va. 225, 234 (1873)).) Finding this analysis persuasive, the Court finds no error.

[13] The Magistrate Judge issued the R&R on February 5, 2019. The Fourth Circuit published *Curtis v. Propel Property Tax Funding, LLC* on February 6, 2019. 915 F.3d 234.

[14] The Code of Federal Regulations contains the implementing regulations pertaining to the CLA ("Regulation M"). 12 C.F.R. § 1013 *et seq.*

7

§§ 1667a(5) and (9) or Regulation M § 1013.3(a)(2) and § 1013.4(c), (e), (i), and (j). Section 1013.4(e) requires a lender to disclose the

> total of payments, with a description such as "the amount you will have paid by the end of the lease." This amount is the sum of the amount due at lease signing (less any refundable amounts), the total amount of periodic payments (less any portion of the periodic payment paid at lease signing), and other charges under paragraphs (b), (c), and (d) of this section.

12 C.F.R. § 1013.4(e). Taylor alleges that the Agreement contains a heading that reads: **"TOTAL OF PAYMENTS/PAPER BILLING FEE."** (Agr. 1.) Beneath this heading, a portion reads: "The amount I will have paid by the end of the Lease: $8,619.24."[15] (*Id.*) But the $8,619.24 figure "equals the sum of periodic payments (21 x $410.44), not the sum of *all* payments due 'by the end of the lease.'" (Compl. ¶ 103.) Thus, Taylor argues, this number does not represent the "total amount of payments" due under the terms of the Agreement as required by Regulation M—nor as the heading **"TOTAL OF PAYMENTS[]"** in the Agreement itself suggests—because it excludes the initial payment and other contractual costs, such as the cost of purchasing or returning the heat pump. 12 C.F.R. § 1013.4(e).

In its Rule 12(b)(1) Motion to Dismiss,[16] Timepayment argued that, even assuming the disclosures did not comply with the CLA provisions or its pertinent regulations, Taylor's claim

---

[15] Directly below this sentence, the following words appear in smaller lettering: "(Total Monthly Lease Payment x Lease Term)." (Agr. 1.)

[16] Here, Timepayment's Rule 12(b)(1) Motion to Dismiss attacks the Complaint on its face, asserting that the complaint fails to state a claim upon which subject-matter jurisdiction can lie. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a challenge, a court assumes the truth of the facts alleged by plaintiff, thereby functionally affording the plaintiff the same procedural protection he or she would receive under Rule 12(b)(6) consideration. *See Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *also Beck v. McDonald*, 848 F.3d at 270.

must fail because Taylor lacks standing under Article III of the United States Constitution.[17] U.S. Const. Art. III, § 2. Specifically, Timepayment argued that Taylor failed to state an injury in fact.

Applying then-existing case law, the R&R ultimately concluded that Count I failed because, even assuming that Timepayment violated the CLA provisions, Taylor "failed to allege how any deficiencies with the disclosures deceived him or left him oblivious to the true cost of the lease—the type of injury that Congress intended the CLA to prevent." (R&R 12 (citing *Cottle v. Monitech, Inc.*, No. 7:17cv137, 2017 WL 6519024 (E.D. N.C. Dec. 20, 2017), *aff'd*, 733 F. App'x 136 (4th Cir. 2018) (affirming, per curium, the district court)). Given the Fourth Circuit's most recent evaluation of standing in *Curtis*, and for the reasons stated below, the Court concludes that the CLA disclosure count (Count I) survives the Rule 12(b)(1) challenge.

### B. <u>Legal Standard: Standing</u>

The Fourth Circuit has reiterated that a substantive statutory violation may, without more, confer standing to an injured party. *Curtis*, 915 F.3d at 241. As to procedural violations, in *Spokeo*, the Supreme Court discussed the manner in which a plaintiff must allege "injury in fact" to establish standing for what courts call a "procedural violation" of statutory requirements. The Supreme Court confirmed that, to establish an injury in fact, a plaintiff must demonstrate that she or he suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting

---

[17] To establish Article III standing, a plaintiff must show that she or he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial outcome." *Spokeo*, 136 S. Ct. at 1547 (citing *Lujan*, 504 U.S. at 560–61).

*Lujan*, 504 U.S. at 560). In doing so, the *Spokeo* court refined standing law by defining "particularized"[18] and "concrete" with specificity.

The *Spokeo* court stated that for an injury to be "concrete," it must be "de facto," meaning that it must be "real," and not "abstract." *Spokeo*, 136 S. Ct. at 1548 (quotation omitted). That said, an injury need not be "tangible" in order to be "concrete." *Id.* at 1549 (quotation omitted). An intangible injury may constitute injury in fact. *Id.* The *Spokeo* court noted that even the risk of real harm might satisfy concreteness. *Id.* In evaluating whether an intangible injury satisfies the "concreteness" requirement, the Supreme Court reiterated two important considerations: (1) history, which may reveal "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts;" and, (2) the judgment of Congress, which "'has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" *Id.* (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in judgment)); *see also Curtis*, 915 F.3d at 241 (recognizing Congressional authority to define substantive rights, the violation of which confer Article III standing).

With respect to this congressionally-defined, or statutory, standing, the *Spokeo* court explained: "Article III standing requires a concrete injury even in the context of a statutory violation."[19] *Id.* Thus, a plaintiff "could not, for example, allege a bare procedural violation,

---

[18] The *Spokeo* court first found that, for an injury to be "'particularized,' it 'must affect the plaintiff in a personal and individual way,'" but particularity does not drive this analysis. *See Spokeo*, 136 S.Ct. at 1548 (citing *Lujan*, 504 U.S. at 560 n.1).

[19] *Spokeo* favorably discussed several cases that upheld Congressional power to create a legally cognizable right to specific information, the deprivation of which would constitute a concrete injury sufficient to satisfy Article III. Many courts describe this statutory standing as

divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing.")).

The *Spokeo* court observed that in cases in which "harms may be difficult to prove or measure[,]" *id.* at 1549 (citing Restatement (First) of Torts §§ 569 (libel), 570 (slander per se) (1938)), "the violation of a procedural right granted by statute can be sufficient . . . [and] a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified," *id.* at 1544 (citing *Akins*, 524 U.S. at 20–25). A plaintiff may therefore suffer "a concrete informational injury where [she or] he is denied access to information required to be disclosed by statute, *and* [she or] he 'suffers, by being denied access to that information, the type of harm *Congress sought to prevent* by requiring disclosure.'" *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 345 (4th Cir. 2017) (quoting *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016)). In such a situation, a procedural injury can become constitutionally cognizable when "a person lack[s] access to information to which [she or] he is legally entitled and . . . the denial of that information creates a 'real' harm with an adverse effect." *Id.* at 345 (citing *Spokeo*, 136 S. Ct. at 1548; *Akins*, 524 U.S. at 21).

### C. Taylor Plausibly Alleges Facts to Establish Article III Standing

Taylor's Objection asserts that the R&R erred in construing the alleged violations as procedural rather than substantive. Taylor draws analogies to, and relies heavily on, the Fourth

---

flowing from an "informational injury." *See Spokeo*, 524 U.S. at 1544 (citing *Fed. Election Comm'n v. Akins*, 521 U.S. 20–25 (1998) (upholding the lower court's finding of a concrete injury when defendants did not give plaintiff voters information about candidates as required by federal law)).

Circuit's analysis in *Curtis*, which postdates the R&R: "The *Curtis* complaint centered on the defendant's multi-year installment agreement containing restrictions specifically prohibited by the [Electronic Funds Transfer Act], which violations the Fourth Circuit found to be 'substantive' rather than 'procedural' due to their relationship to the purpose of the statute." (Taylor Obj. 7, ECF No. 32 (citing *Curtis*, 915 F.3d at 241).) The Court finds *Curtis's* discussion of substantive rights instructive, and thus Taylor's arguments persuasive.

In *Curtis*, the Fourth Circuit considered whether a plaintiff had standing to bring suit based on the defendant's alleged violations of the Electronic Funds Transfer Act [EFTA]. *See generally Curtis*, 915 F.3d 234. The plaintiff, who owed certain local taxes, had entered into a tax payment agreement with the defendant.[20] *Id.* at 237. Relevant here, the plaintiff alleged that the lender defendant required him to repay the defendant "by preauthorized electronic funds transfer ("EFTs") and that the required authorization form [did] not contain a space that would allow him to indicate that he declined to do so." *Id.* at 238. According to the plaintiff, the defendant's actions violated the EFTA because the EFTA specifically proscribed a lender from conditioning the extension of credit on the borrower's acquiescence to preauthorized EFT. *Curtis*, 915 F.3d at 241 (citing 15 U.S.C. § 1693k). The defendant argued that, even if it violated the EFTA, the violation constituted a mere procedural violation, which alone would not confer standing.

The Fourth Circuit disagreed with the defendant, finding that the lender violated the plaintiff's substantive statutory rights when it required preauthorizing electronic funds transfers. *Id.* The *Curtis* court explained: "Congress enacted EFTA to protect 'individual consumer

---

[20] Under these tax payment agreements, "a third party agrees to pay taxes owed to a locality on behalf of a taxpayer, and the taxpayer agrees to repay the third party in installments, with fees and interest." *Curtis*, 915 F.3d at 238.

rights' in the context of electronic fund transfers." *Curtis*, 915 F.3d at 241 (quoting 15 U.S.C. § 1693(b)). "Among these substantive rights is the right of a consumer to enter into a credit agreement without being required to agree to preauthorized EFTs. [15 U.S.C.] § 1693k. This is the same right that [the plaintiff] alleges that [the defendant] violated in its [agreement] with him." *Id.*

Thus, *Curtis* lends support for Taylor's argument that, in certain circumstances, a statutory violation that reaches the very purpose of the statute may constitute a substantive violation rather than a procedural violation. Notably, in the case at bar, Congress enacted the CLA "to prevent the 'deception, misinformation, and obliviousness to the true costs of credit or lease terms . . . encountered by inexperienced or uninformed consumers." (R&R 9 (citing *Monitech*, 2017 WL 6519024 at *3.).) To further this goal, the CLA requires lenders to make numerous written, and sometimes segregated, disclosures to borrowers.

As alleged in the Complaint, and summarized in the R&R, Taylor plausibly alleges that Timepayment violated a number of these requirements. *Compare, e.g.*, 12 C.F.R. § 1013.4(e) (requiring a lender to disclose the total amount due under a lease agreement); *with* (Agr. 1 (omitting the total amount due under the Agreement).). These purported violations include, among others: (1) providing misinformation, by misleadingly identifying the sum of the monthly payments as the total amount due under the Agreement;[21] and, (2) omitting required information,

---

[21] In its Motion to Dismiss, Timepayment argued that the Agreement "conspicuously disclosed" the total amount due under the Agreement. (Mem. Supp. Mot. Dismiss 8.) As to the monthly payments, the Agreement states: "The amount I will have paid by the end of the Lease: $8,619.24." Directly below this sentence, the following words appear in smaller lettering: "(Total Monthly Lease Payment x Lease Term)." (Agr. 1.)

According to Timepayment, then, the small lettering clarifies that the $8,619.24 figures refers only to the total amount due in monthly payments. At a minimum, the placement is awkward. Had the disclosure mimicked the Model Form, for instance, no implication of deception could arise. (*See, e.g.*, "Model Form," ECF No. 1-2.) Thus, viewing the facts

13

such as the total amount due under the Agreement.[22] These alleged violations do not merely represent a failure to disclose required information; as alleged, they arguably provide inaccurate information, via questionable provisions,[23] which potentially mislead the consumer.

---

favorably to Taylor, as it must, the Court reasonably infers that these dual descriptions of the $8,619.24 figure may misinform an inexperienced consumer.

Timepayment reiterates that "the amount due at lease signing ($384.72) and the total of periodic payments ($8,619.24) are conspicuously disclosed side-by-side on the first page of the" Agreement. (Mem. Supp. Mot. Dismiss 8.) Timepayment avers that Taylor only "faults [it] for failing to add these two numbers together for him." (*Id.*) But the CLA requires exactly that of lenders: that they provide the borrower with the total amount due under the lease, defined as "the sum of the amount due at lease signing (less any refundable amounts), the total amount of periodic payments (less any portion of the periodic payment paid at lease signing), and other charges under paragraphs (b), (c), and (d) of this section." 12 C.F.R. § 1013.4(e).

Reading the Agreement and the Complaint favorably towards Taylor, the dual descriptions of the $8,619.24 and the omission of a total amount due under the Agreement could misinform an "inexperienced or uninformed consumer[]" about the "true cost of credit." *Monitech*, 2017 WL 6519024 at *3.

[22] While prominently displaying the cost of payments, the Agreement less obviously discloses the full price of purchasing the heat pump at the end of the twenty-one-month payment period. (Compl. ¶¶ 44–46, 104–05, 107–08; *see also* Agr. 1.) Read favorably towards Taylor, this unclear disclosure exceeds the CLA's constraints both because the amount is indistinct and because a heat pump is a necessity, not a "luxury akin to a new automobile or laptop computer." (*Id.* ¶ 71.) The purchase of the heat pump at the end of the payment period, realistically, is not optional. Any homeowner who leases a heat pump for nearly two years will "undoubtedly elect to purchase that equipment." (*Id.* ¶ 72.) Read favorably, Timepayment's minimization of the payments and costs due after the final monthly payment could mislead a consumer because buying the heat pump clearly constitutes a "true," and indeed unavoidable "cost" of the credit terms.

The Agreement compounds this ambiguity when it, on the second page, includes terms describing the right to return the equipment. Though the "return of property" provision states that any return must be at the creditor's expense, the provision does not clearly outline the potential costs or logistics, which would include hiring others to remove the heat pump, fixing any HVAC changes that result from removal, and purchasing a new heat pump. (Compl. ¶¶ 60 n.6, 73–74; Agr. 2.)

Alongside the deemphasized disclosure of a plausibly required purchase (and its cost) and the cost of an unlikely invocation of the right to return, the Agreement, especially when read favorably to Taylor, veers even more toward embodying the kind of misinformation and deception Congress sought to prevent through enactment of the CLA.

[23] For instance, Plaintiffs contend that the early termination provision violates the CLA because it is unreasonable. As to early termination, the Agreement would require Taylor to

Taylor at times describes the disclosures as "misleading[]," (Compl. ¶ 103), and describes himself as "unaware" of the true financing cost[24] associated with purchasing the heat pump, (*id.* ¶ 158).[25] The statutory violations, it seems, go to the heart of what the CLA sought to prevent: deception of, misinformation directed at, and obliviousness of a consumer as to the terms and

---

forfeit all payments made, pay all remaining payments at a 4% discount, and pay for the cost of removal, or for the cost to purchase if not removed.

[24] In his Complaint, Taylor discusses the "true *financing* cost" of the Agreement, taking issue with the Agreement's failure to disclose the Annual Percentage Rate as required under TILA. (Compl. ¶¶ 183–84 (emphasis added).) The R&R aptly notes that Taylor alleges only that he was unaware of the *financing* cost of this purchase, which seems related to his TILA claim, but not his CLA claim.
But in articulating the basis for Count I specifically, Taylor avers he "was unaware of the true financing cost associated with the purchase of his heat pump as a result of Defendant's inadequate disclosures." (*Id.* ¶ 158.) Although Taylor does not expressly state that he remained oblivious to the true *total* cost of the Agreement, the Court draws the reasonable inference that the CLA violations caused and contributed to Taylor's obliviousness of the total cost of the Agreement, including the financing rate. Put differently, because Taylor plausibly remained unaware of the actual *financing* cost of the agreement, a favorable inference of the Complaint reasonably suggests that Taylor remained similarly unaware of the actual *total* cost of the Agreement.

[25] The Court considers Taylor's allegations distinguishable from those alleged in *Monitech.* 2017 WL 6519024 at *3. The *Monitech* case involved the terms of monthly payments for an ignition interlock after a conviction in state court. First, while legally necessary, the interlock device does not constitute the type of necessity that the heat pump does here. Nor, commonsensically, would a consumer generally *want* to purchase an ignition interlock, must less *need* to purchase one because, usually, the order requiring an ignition interlock ends when the probation period ends.
Second, in *Monitech*, the plaintiff alleged that the CLA violations as to the terms of payment resulted in her "confusion." *Id.* The *Monitech* court concluded that confusion did not equal deception, misinformation, or obliviousness. *Id.* Here, instead, Taylor alleges he remained "unaware" of the cost of the Agreement by giving examples of how and why, plausibly suggesting obliviousness for the sake of this Rule 12(b)(1) challenge. (Compl. ¶ 158.)
Next, the *Monitech* court stated that the plaintiff had "failed to allege that defendant's procedural violations had any adverse effect on her conduct in order to demonstrate an injury in fact." *Id.* Here, Taylor alleges that, had Timepayment properly complied with disclosure requirements, he would have sought other means of financing the acquisition of the heat pump. Considering these allegations and the Agreement in the light most favorable to Taylor, these minimal allegations of injury suffice to overcome this Rule 12(b)(1) challenge.

amount due under a lease agreement. *Curtis*, 915 F.3d at 240; *Monitech*, 2017 WL 6519024 at *3. Taylor plausibly alleges that Timepayment violated the CLA's required disclosures; and he plausibly alleges that he suffered the kind of harm Congress intended to prevent by regulating these very disclosures.

Taylor also argues that, even assuming the statutory violations constitute procedural, rather than substantive, violations, he plausibly alleged at least a risk of real harm. (Taylor Obj. 8); *Spokeo*, 136 S. Ct. at 1549 (stating that, in some cases, an intangible injury may constitute injury in fact and even the risk of real harm might satisfy concreteness). Viewing all the well-pleaded allegations in the light most favorable to Taylor, as the Court must at this juncture, the Court finds that Taylor plausibly states that he suffered "the type of harm *Congress sought to prevent* by requiring disclosure.'" *Dreher*, 856 F.3d at 345 (quoting *Jewell*, 828 F.3d at 992).

In sum, Taylor plausibly alleges that Timepayment violated the CLA when it failed to adequately disclose information related to the amount due under the Agreement, including failing to clearly state and identify the total amount due on monthly payments or the total amount due under the Agreement. Next, Taylor alleges that, as a result of the improper disclosures and the deficiencies of the Agreement, he remained "unaware" of the true financing cost. (Compl. ¶¶ 68, 158.) Based on this, the Court draws the reasonable inference that Taylor remained misinformed or oblivious to the full amount due under the terms of the Agreement. And this status represents precisely the kind of harm Congress sought to prevent in enacting the CLA provisions at issue. *See Monitech*, 2017 WL 6519024 at *3; *Dreher*, 856 F.3d at 345.

Because the Complaint plausibly alleges that Timepayment violated Taylor's statutory right under the CLA, and these CLA violations caused Taylor to suffer the kind of harm that Congress sought to prevent in enacting the violated provisions, Taylor adequately satisfies

Article III's injury in fact requirement for purposes of the Motion to Dismiss. The Court will deny the Motion to Dismiss as to Count I, the CLA disclosure count.

### III. The Court Will Overrule Taylor's Remaining Objections

Taylor raises two other objections in an effort to sustain Counts II and IV, which the R&R recommends dismissing for want of standing. The Court will overrule both objections, but grant Taylor leave to amended his Complaint should he wish to do so.

First, as to Count IV (the Virginia UCC count), Taylor assigns error to the R&R's finding that he failed to "satisfy the 'actual or imminent' element of the injury in fact analysis." (R&R 20.) According to Taylor, *Curtis* "confirms that Mr. Taylor has been injured for purposes of Article III standing *without* having already been subjected to improper default or repossession methods." (Taylor Obj. 19.) Taylor misunderstands the nature of the rights at issue in *Curtis* compared to here.

In *Curtis*, the violation of the plaintiff's rights occurred upon entering into the written agreement with the lender because the agreement itself violated the statute. Put differently, the Electronic Funds Transfer Act ("EFTA") proscribed parties from entering into the kind of agreement that the defendant foisted onto the *Curtis* plaintiff. Here, Taylor claims that acting in accordance with the terms of the Agreement would violate his rights under the Virginia UCC. But this represents a hypothetical, future injury. Only a violation of the terms of the Virginia UCC triggers its protections. Unlike in *Curtis*, the mere existence of the Agreement does not itself constitute an injury.

Next, Taylor avers that the CLA early termination count (Count II) should survive the Rule 12(b)(1) challenge for the same reason: according to Taylor, *Curtis* supports his position that the Agreement's early termination provision violates the CLA, thus causing him injury. As

discussed above, *Curtis* did not change the requirements for a plaintiff to show the "actual or imminent" prong of the injury in fact analysis. Here, the Magistrate Judge concluded that Taylor failed to show the "actual or imminent" prong of the injury in fact analysis because he "alleged a 'speculative, hypothetical injury' that falls short of Article III's case-or-controversy requirement" that does not suffice to meet Article III's requirement that an injury exist or be imminent confer standing. (R&R 19); *Spokeo*, 136 S. Ct. at 1548. Specifically, Taylor failed to allege that *but for* the allegedly violative early termination provision, he would have terminated the Agreement early. Even making all reasonable inferences in Taylor's favor, he failed to adequately allege an actual or imminent harm stemming from the alleged violation of the CLA.[26] Accordingly, the Magistrate Judge did not err in concluding that Taylor lacks standing the bring Count II based on the Complaint as it now stands. In the interest of justice, the Court will grant Taylor leave to amend his Complaint, should he wish to do so, to address these pleading deficiencies.

### IV. Conclusion

For the reasons stated above, the Court will:

1) adopt in part the findings set forth in the R&R;

2) overrule Timepayment's Objections;

3) sustain Taylor's Objection as to Count I;

4) overrule Taylor's Objections as to Counts II and IV;

5) grant Timepayment's Motion to Dismiss as to Counts II and IV;

6) deny Timepayment's Motion to Dismiss as to Counts I, III, and V;

---

[26] Although Taylor alleges that he would have sought alternative financing had he better understood the terms of the Agreement, this alleged harm does not relate to the early termination provision, meaning it does not confer standing as to Count II.

7) dismiss Counts II and IV of Taylor's Complaint; and

8) grant Taylor leave to amend his Complaint.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 3/31/19
Richmond, Virginia